IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: : | |
| MICHELLE A. GOMBAR : | CHAPTER 13 |
|     Debtor : | |
| : | |
| JACK N. ZAHAROPOULOS : | |
| STANDING CHAPTER 13 TRUSTEE : | |
|     Movant : | |
| : | |
|     vs. : | CASE NO. 5:25-bk-00716-MJC |
| : | |
| MICHELLE A. GOMBAR : | |
|     Respondent : | |

**TRUSTEE'S REPLY BRIEF IN OPPOSITION TO CONFIRMATION OF FIRST AMENDED CHAPTER 13 PLAN**

AND NOW COMES, Movant Jack N. Zaharopoulos Standing Chapter 13 Trustee by and through his Attorney Agatha R. McHale, Esquire and files this brief in opposition to confirmation of the First Amended Plan, filed on September 17, 2025.

I. **STATEMENT OF FACTS**

On March 19, 2025, Michelle A. Gombar (hereinafter "Debtor") filed a Petition in the United States Bankruptcy Court. The Debtor filed a Chapter 13 Plan with the Petition. On July 9, 2025, Debtor filed a First Amended Chapter 13 Plan. The First Amended Plan proposes a base amount of $19,430.00. The First Amended Plan seeks to specially classify an unsecured IRS tax debt. The First Amended Plan lists the reason for special classification as "Co-Debtor Claim". The Trustee filed

1

an objection to the First Amended Plan on July 23, 2025. The Trustee's Objection filed on July 23, 2025, asserts a cosigned/co-debtor claim is not a reason for special classification of the debt.

II. **ARGUMENT**

At the outset, the Trustee observes that the "however" clause in §1322(b)(1) says that the Debtor's "(P)lan may treat claims for *consumer* debt of the debtor . . . differently." (Emphasis supplied). It is noted that to justify her plan that calls for the separate classification of an unsecured tax debt, the Debtor argues that the tax claim at issue in this case is not like the Debtor's other unsecured debt because tax liabilities are generally not considered "consumer debt" and thus are not protected by the co-debtor stay pursuant §1301(a) effectively putting the Debtor's non-filing spouse in danger of collection. See Debtor's Brief, p. 3.

The Trustee asserts that because the co-debtor tax claim is not a consumer debt of the Debtor, the Debtor may not rely upon the carve out provision for co-signed claims under § 1322(b)(1) as a basis for the separate classification of said claim. The Debtor cites In re Linton, and notes that the Linton court confirmed a plan that separately classified joint debt held with the non-filing spouse, where the joint debt was paid in full and the individual claims of the Debtor received a dividend of 5 to 6%. Linton, 2011 Bankr. LEXIS 2939 (Bankr. E.D. Va. July 27, 2011).

In that case, the Court noted that it was "unquestionably a close case" but allowed the separate classification because it furthered the Debtor's rehabilitation by leaving the Debtor's household with less surviving debt. Id. However, there was another factor in the Linton case that must be considered. In that case, nearly 73% of the Debtor's individual debt was nondischargeable student loans. Id. Therefore, 73% of the non-joint debt would survive the bankruptcy and eventually could be paid in full. Id.

In Linton, the Debtor's reason for paying his joint claims was to assist his wife so that she would have more funds available to pay down her substantial student loan debt. In this case, the Debtor argues that income taxes are not consumer debt for purposes of § 1301(a), and therefore, the Internal Revenue Service would be free to pursue collection efforts against her spouse during the pendency of the Debtor's bankruptcy. See Debtor's Brief, p. 4.

The Trustee submits that the potential risk of collection is not a sufficient basis for the discrimination against other unsecured creditors, especially in this case where the Debtor was not living with her spouse at filing (see Means Test, Dkt. No. 1, p. 63; also, Debtor testified at her Meeting of Creditors that she is no longer living with him). Also, there is no indication that the IRS has approached the Debtor's spouse for payments or that the IRS has attempted to collect the tax. Moreover, a potential collection effort is not sufficient to justify separate classification, particularly in light

3

of §1329 which allows for modification of the plan should the need arise during the course of the plan. A plan proponent has the burden of proving by a preponderance of evidence that the plan meets the Code's requirements, including a sufficient showing of a reasonable basis for the degree of discrimination amongst unsecured creditors. See, In re Alicea, 199 B.R. 862, 865-866 (Bankr. D. N.J. 1996).

Courts evaluate the totality of the circumstances to determine whether the plan is fair to the individual creditors. For example, in the Martin case, the Court addressed, in relevant part, two issues: did the debtor's plan meet the good faith standard mandated by § 1325(a)(3), and secondly, did the plan unfairly discriminate against the debtor's individual unsecured creditors? In re Martin, 189 B.R. 619 (E.D. Va. 1995). The Martin court accepted the rationale and analysis of In re Battista and In re Cheak. See, In re Battista, 180 Bankr. 355 (Bankr.D.N.H. 1995); In re Cheak, 171 Bankr. 55 (Bankr.S.D.III.1994). The Court said that Cheak and Battista comported most closely with the intent of Congress and the underlying principles of the Bankruptcy Code:

> Permitting a debtor to arbitrarily differentiate between creditors based upon the co-signed status of a debt – without any further justification – is an invitation to abuse. Particularly in the circumstances of this case – where the debtor is co-signed with his spouse and that spouse has a significant income – permitting a different treatment of co-signed debts which may represent unfair discrimination appears to be antithetical to the intent, spirit and purpose of Chapter 13. Martin, 189 B.R. 619.

4

Case 5:25-bk-00716-MJC    Doc 38    Filed 09/17/25    Entered 09/17/25 14:38:49    Desc
Main Document    Page 4 of 7

For illustration, consider the example where a Chapter 13 debtor pays 10% to general unsecured creditors, but 100% to unsecured creditors who have received the co-signature of a spouse. The spouse's income is effectively shielded with respect to the co-signed debts. In one scenario, the spouse may have no disposable income – all of her income being used to pay for living expenses or legitimate personal debts. At the other extreme, the spouse may have an abundance of disposable income, may be paying for high value luxury items, or may be protecting extensive property holdings. It would be difficult for this Court to look with favor on a debtor's plan which proposes to pay 10% to general unsecured creditors and 100% to co-signed unsecured creditors while the debtor's spouse makes payments on a Lambourghini. Additionally, absent some requirement for a demonstration of fair discrimination, a debtor voluntarily co-sign any and all of the spouse's obligations immediately prior to bankruptcy, and apply a greater percentage of his disposable income to paying those co-signed debts. The debtor's actions would unfairly reduce the percentage and total payment that the debtor's original creditors would receive. Id.

The Trustee respectfully asserts that the Court cannot confirm the Debtor's plan which proposes paying 100% of the unsecured claim of the IRS based on the current state of the record. First, the Debtor's justification for paying the claim is speculative as to whether the IRS has attempted to collect the debt from the Debtor's spouse. Second, the carve out for co-debtor claims applies to consumer debt and, not only does the Debtor herself state that the debt is not a consumer debt, but there is nothing in the record that shows the 2018 tax is consumer related.

The Debtor did not produce or attach a copy of the 2018 tax return; the IRS claim does not indicate a co-debtor; Schedule H does not indicate a co-debtor; and Schedule E/F says the IRS claim is the Debtor's only. Furthermore, Schedule I shows no income for the non-filing spouse because the parties were separated at the

5

time of filing (*see* Means Test, Dkt. No. 1, p. 63; also, Debtor testified at her Meeting of Creditors that she does not live with her husband). Indeed, Form 122C-1 shows a household size of 1 person. Moreover, the Debtor has not provided any evidence that her non-filing spouse does not have a greater ability to pay this unsecured, nonpriority tax debt. Based on the available record, it is entirely possible that the Debtor's non-filing spouse earns significantly more than she does and is in a better position to pay the 2018 tax debt.

### III. CONCLUSION

The Debtor has failed to set forth sufficient evidence to support a finding that the 2018 personal income tax liability is in fact a joint debt that should be given special classification in the First Amended Chapter 13 Plan. Accordingly, the Trustee respectfully requests that this Honorable Court sustain the Chapter 13 Trustee's Objection to the First Amended Plan and enter an order denying confirmation of the Debtor's First Amended Chapter 13 Plan.

Date: September 17, 2025

Respectfully submitted,

Jack N. Zaharopoulos  
Standing Chapter 13 Trustee  
8125 Adams Drive, Suite A  
Hummelstown, PA 17036  
(717) 566-6097

BY: /s/ Agatha R. McHale, Esquire  
Attorney for Trustee  
Bar ID #47613

# CERTIFICATE OF SERVICE

      AND NOW, this 17th day of September 2025, I, hereby certify that I served a copy of the within Brief by electronically notifying parties or by depositing a true and correct copy of the same in the United States Mail at Hummelstown, Pennsylvania, postage prepaid, first-class mail, addressed to the following:

**_VIA ELECTRONIC SERVICE ONLY:_**
Tullio DeLuca, Esquire
381 N. 9th Avenue
Scranton, PA 18504
tullio.deluca@verizon.net


Office of the U.S. Trustee
1501 North 6th Street
P.O. Box 302
Harrisburg, PA 17102

                                            /s/ Elizabeth R. Fitzgerald
                                            Office of Jack N. Zaharopoulos
                                            Standing Chapter 13 Trustee